This is a case that is entirely governed by United States Code Section 455A. It is a statute which is phrased mandatorily and it says that the judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned. Counsel, I was worried about the same potential for manipulation that the district courts are going to be thinking. Your client is a great pen pal. He writes a lot of letters, not just to the President, and he could write letters under your theory of the case, as I understand it, to the three of us. We're off the case. Then he can write letters to the other judges on the Ninth Circuit, and they're off the case, and we'll get some judges from some other circuit, and then he can do something like the mass mailings that law clerk applicants do to all the Federal Circuit judges, and nobody can decide a case against him. Is that right, under your theory? I mean, an argument can be made on that. It's a fairly extreme hypothetical. Is it so extreme? It looks to me as though he threatens everybody who has anything to do with him. Well, I mean, a lot of people don't. Or worse, he could simply pick and choose among the array of Ninth Circuit judges as to which ones he wanted disqualified. But no one got a letter here. No one has. Well, I don't know whether I should be flattered or disappointed, but... Hopefully flattered. But I would point out, I'll skip to the end of what I was going to say. The simple remedy is that this Court, should it elect a remand for resentencing, can easily say that the judge, the name of the judge will not be disclosed prior to sentencing, or it would disclose the counsel specific instructions not to provide the name of that sentencing judge to the defendant. So there are expedients here which could easily be addressed. Why should we need to do that? Why should a defendant be enabled to take a judge off his case? In this particular case, I believe that the focus has to be on the judge because that's where the statutory focus is. It's not directed to the defendant. It's directed to the judge. And if the judge knows things which might create even the possible suggestion or hint of partiality, then the judge should act. I don't think the statute says suggestion or hint. No, the cases do. I'm not suggesting it's in there, in the statute. It's in any proceeding in which impartiality might reasonably be questioned, reasonably. And there are some cases which speak to the Lilleberg United States Supreme Court is one which stands for the notion that even the appearance of partiality must be avoided. And what this case really comes down to is the trial judge was placed on notice immediately at the commencement of this hearing by Mr. Holland of these threats. They were brought out on the table. And this was the first time I'd ever heard of them. And this is a judge who had just days before granted a continuance, moving the sentence from April 17th to May 15th, and then all of a sudden, with no other pleadings being filed by any party, he moved it up to April 13th. And I think the Mr. Gordon. Yes, sir. The judge, the district judge, knew about this when he took the bench at the time of sentencing. I think that's true. And he mentioned it at the beginning of this sentencing, I believe. Isn't that right? It was actually the defendant on page, I believe it's three of the sentencing transcript, which the government has provided you in total. The district judge mentioned this when the proceedings began. No, sir, he did not. It was the defendant. So let me ask you this. The detectives told me yesterday that I threatened you at home. Did I threaten you at home? Yes. And the judge says, we'll get to those issues in a minute. All right. Well, and then when the judge mentioned it, were you the lawyer? I was. Well, you would have had an opportunity to say, well, wait a minute, Your Honor, you have to then refuse yourself. And you didn't do that. I didn't do that, in part because I was not aware until the very end of this of what I perceived to be the fundamental inconsistency in the judge's position here, which is, on the one hand, you got the sentence. And then when the judge made his sentence, then you objected at what? Not even then, really. That's correct. But I don't believe that. No. There's even a case, which I've discovered since the government's brief from this circuit, Nolley v. the Commissioner, 860. Could you give that to the clerk after we're through? I beg your pardon? You've not cited that to us before. I have not. Could you do it on a little slip and cite the case and give it to the clerk? I'd be happy to. But that case stands on the notion that failure to move for refusal of trial doesn't preclude raising the matter on appeal. Okay. And I think it's important. Next question. Let's assume that's solved. That would hold up. Then what we've got is the district judge saying, I received a call at home, apparently on his own answering machine, I guess. And he said that I interpret it could be viewed as a threat, but I interpret it as an attempt to manipulate the system. And then he goes ahead and imposes his sentence. Now, we don't know what was said in the threat, do we? That's correct. We don't. But what we have is the judge saying it was an attempt to manipulate. That's the best way to interpret it. But we also have the judge saying later on that something that I perceive is contradictory, that suggests to me that the judge believed that this person's threat was more than simply that. He says at page 39. He can carry them out. Pardon me? There's a litany about he can carry them out. He can carry his threats out. He's got the power to do it. Yes. And I don't see how you can, on the one hand, without any distinguishing factor, say this is a manipulation to threaten a federal judge situated in  the United States and a prosecutor have real import to them and have the possibility of being carried out. I don't understand the connection there. It seems to me that the threat could be real, and it could also be manipulative in intent, motivated by an attempt to get the judge off the case. If you don't get off my case, I will kill you. And I have friends outside who will help me do it. It could be real and also to get the judge off the case. That's the very thing he was being sentenced for, though, was making a threat to a judge. And I just find that the – Isn't the law that if the idea is to manipulate the judge off the case, then the threat won't force your accusal? I don't know that there's ever been a really clear statement of that where there haven't – You said it in Clemens. I beg your pardon? I thought we did say it in Clemens. But I don't think that involves facts that are even close to this one because this is a threat case, and there is no articulation by the trial judge of how you distinguish between threats that could really make you fear for your own life and threats which are simply attempts to manipulate. And I think it's that appearance of partiality that I'm concerned about. On the one hand, there's some connections there. The issue under 455 is whether a reasonable person would think you lacked impartiality, whether you fear getting killed or whether you just hate the guy or have contempt for the guy. All of those things might affect your impartiality, even if you don't fear that he's going to kill you. Fearing that he's going to kill you could also affect your impartiality. I think it did in this case. But I don't see what the distinction is here, why it matters, whether it could really carry him out. All I can see that matters is whether it's an attempt to manipulate the judge off the case. I guess I'm more concerned with the fact that I think the judge gave a lot of weight to the possibility of these threats being carried out. All the threats in this case, the one to the President, the State Court judge, the prosecutor, and the trial judge in this case were all made while this person was an inmate at the Maximum Security Institution in Boise. So if he had the ability to carry out one, I would think he'd have the ability to carry out another. And the very fact that it's from within a prison, this person could get the judge's home phone number, which I would have no idea of how to go about doing, suggests that there may be a little more to this than simply a manipulation, that a reasonable person would say, I'm a little concerned about this guy. Counsel, your client pled guilty here. And if you're successful before us, I assume he's not going to withdraw his guilty plea. The only thing he's going to do is go before some other judge to be sentenced. Is that correct? Precisely the remedy I'm seeking. Okay. And your client got 78 months. What was the recommendation from the government or the PSR? I don't recall that they made any specific recommendation. Is this high or low under the guidelines? That's the absolute top of that guideline. And what was the bottom? I believe it was 60 months, but I think it's within the body of the sentencing hearing. It certainly was the top. Your client has a lengthy criminal history? My client has spent almost his entire adult life incarcerated, and much of his life is in juvenile facilities and in foster care. What did you argue for in the district court in terms of a sentence here? I asked for a downward departure based upon what I believe to be his inability to carry these kinds of threats out in the entire totality of his pathetic and truly lamentable existence. Thank you. Could you? Yes? I suppose the judge made a finding of fact that the purpose of this threat was to manipulate, to get him off the case. So I was thinking that under the logic of our Clemens decision and our rem. I'm having a hard time hearing you over the construction. Another one is Studley. As I understood it, the judge made what amounts to a finding of fact that the purpose of calling him at home was to manipulate him off the case. Under Clemens and Studley, we seem to have said if the purpose is to manipulate the judge off the case, it doesn't work. Are you trying to say that that finding of fact is not a finding of fact or that it's clearly erroneous or it doesn't matter whether that's true or not? I'm not sure I understand. I'm saying it's undercut by later things that the judge said during the course of this hearing when he said, so contrary to what he says, if he is given the opportunity, he has the ability to carry out his threats. And I'm saying that from perceived on the outside, I can't imagine a reasonable person or a reasonable judicial official who perceives that an individual has the ability to carry out threats, who's had death threats made against them, not to be troubled by that to the extent that their impartiality could reasonably be. Could your client be prosecuted for making the phone call to the judge? I'm somewhat surprised it hasn't happened. But he hasn't been? No, he has not. And you don't know of any request by the judge or suggestion that the government ought to look into that? No, I don't, Judge. But I would add parenthetically, and it's outside of the record, that he would phone my office as many as 30 times in the night, and we'd come in and we'd have up to 30 obscene phone messages on our voice message system, and it also included death threats against me. And I believe that he had pretty much totally decompensated during this period. Did you take those threats seriously? Did I? Yes. No, I didn't, which I can see may undercut my argument, but then I didn't in any context conclude that contrary to what he said, if given the opportunity, it's the ability to carry out its threats. And I've never gone on record of expressing a contrary position. I encourage you to be careful. From what I remember of my practice, the threats to lawyers were more often carried out than the threats to judges. This individual, again parenthetically and outside of the record, self-mutilates, and one of his favorite tactics is to take a BIC pen, open up his arm, insert it in there, and then somehow keep it in there. And the last time he did this, which was after being sentenced in this case, and while he was still a prisoner at the Idaho Maximum Security Institution, he became septic as a result of this, and he now has a colostomy and almost lost a leg, so that whatever ability, if any, he may have at one point had to carry out threats is yet further compromised. I admire your integrity as a defense lawyer  Thank you. I appreciate that comment very much. May it please the Court. Alan Burrow, Boise, Idaho, on behalf of the United States. Your Honor, if I could, I'd like to pick up with your remarks at the very end there complimenting Mr. Gordon. I think the record here amply demonstrates that he more than went the extra mile and also went over backwards in order to zealously represent this client. At the end of the sentencing hearing, Mr. Gordon referred to a motion to withdraw as counsel, which he had filed with Judge Lodge. That motion is document number 40 in the district court clerk's record, and he thanked Judge Lodge for not granting his motion, for keeping him on the case, and this also is outside the record, but having known Mr. Gordon for some number of years, as well as the general contours of the bar in Boise, I don't know if there's anybody else who could have done this or who would have stuck through. Mr. Gordon was Mr. Holland's third attorney. The first one quickly got off the case. Then the public defenders were appointed, and Dick Rubin, who's the head public defender there, who's excellent at relating to clients and people, subsequently filed a motion to withdraw to get off the case, and then Mr. Gordon was appointed. But the reason that Judge Lodge moved the sentencing forward, I would submit from the record, had absolutely nothing to do with Judge Lodge feeling personal fear and being gripped by fear. Mr. Gordon, as I pointed out, filed a motion to withdraw, relating facts similar to what he has stated here about the obscene phone calls and the threats to him and his staff. I think he was more concerned about his staff and the psychological effects upon them than he was for himself. But in any event, Judge Lodge, document number 41, on April 12, 2006, denied Mr. Gordon's motion to withdraw, but at the end of the order stated that he would move the sentencing up. So it was clear that what motivated the judge was the mental anguish that this defendant was putting Mr. Gordon and his staff through. The judge noted that the pre-sentence report and everything was done, there was nothing left to be done, and it's clear from that order that he was moving the sentencing forward to stop this torture, if you will. Furthermore, I do not think the judge's comments are inconsistent, that he addressed on the one hand Mr. Holland's argument to the court that I'm really not a threat to anybody, Your Honor, I'm not a violent person. When the judge was saying, well, your record indicates that you could and would carry out threats if given the opportunity, he's referring to Mr. Holland's vast criminal record, a number of charges for armed robbery, for example, at least one or two of which resulted in convictions. He's referring to Mr. Holland's statements to those who were examining him psychiatrically that he would do people harm if he had a chance to do it and that he couldn't, basically he could not be released because he would do somebody harm. Counsel, the judge's statement that on the one hand I don't take this seriously and I think he's trying to manipulate it is, I think, powerful evidence of what was in the judge's mind. I have to say that that is counterbalanced to some extent by him making it precisely that finding later on that he is perfectly capable of carrying out these threats. Well, Your Honor, I would say two things. First of all, as Judge Kleinfeld pointed out, you can have both of those mixed and in the, for example, the Greenspan case, the Tenth Circuit case, they refer to the fact that if one of the defendant's motivations is to delay or manipulate the court system, that's sufficient for the judge to say, I'm not going to recuse myself. I'm not going to allow you to manipulate the system. It doesn't have to be the sole motive as long as it's one of the motives. But furthermore, I would argue that under the record here that the judge's comments were not inconsistent at all. On the one hand, talking about the offense conduct here, he's addressing the defendant's claim that he would never do anybody harm and the judge is saying, look at your criminal record. On the other hand, what the judge is talking about is the evidence of how the defendant has attempted to manipulate the system. In this particular case, on April the 3rd, the judge had to enter an order denying a motion to continuance that was based on a letter received directly from Mr. Holland. So Mr. Holland sent the judge a letter complaining about Mr. Gordon, saying Mr. Gordon wasn't doing anything for him and if there's anything that's painfully ridiculous, it's that accusation, and requesting a minimum of 90 days continuance. So the defendant has requested that. Again, on April the 10th, the defendant writes another letter to the judge requesting another continuance. And then you have on April the 12th Mr. Gordon's motion to withdraw based on the defendant's continually leaving all these phone messages with him. And so you have evidence in this particular case of this defendant trying to manipulate the system, trying to drag out his sentencing for no reason. You have statements by the defendant made to psychiatric examiners and so forth that he wanted to get into the federal system. Well, how would you do that? Commit a federal crime. You have his past history where he wanted to go to California so he fessed up to some past offense he had done in California to get down there. So you have both of these things. You have both evidence of his violent nature and you have evidence of his manipulative nature even in this particular case. I would ask the same question I asked Mr. Gordon. Could Mr. Holland be prosecuted for making the threat against the judge? Your Honor, I'm not aware of any place in the record where Mr. Holland's phone message is stated. I don't know what he stated. You're suggesting that that's insufficient to move forward with. But would a single phone call to a judge, if the judge came in and said I'm very concerned and turned it over to the U.S. Marshals? It could. It absolutely could. I mean, apparently it was a phone message left on a voice message. I don't have any idea exactly what was stated. What Judge Lodge says is that he left a message that could be interpreted as a threat, that some might interpret it as a threat. I don't know exactly what he said. If a judge turned a tape over to the U.S. Marshals, said I'm turning this over to you, you might be interested for whatever purposes you deem important, would a judge then have to recuse himself if he had turned it over to the Marshals? I think if he—I think if the—that's an interesting question, Your Honor. And I'll be as candid as I can. And the problem with hypotheticals is that you never have enough facts. But with that caveat, you know, we're angels fear to tread pools, so here I go. I would tend to say that if the judge has turned it over and has now become a victim, an official victim in a federal case, that he should recuse himself, whether that would be under the statute or not. But then, on the other hand, the problem is, is like what prevents the defendant from doing that to every judge? Well, Mr. Gordon, so that's an interesting solution, which is that you issue an order that will not disclose in advance the identity of the judge. Then the defendant walks into the courtroom and threatens the judge in open court. I'm missing something in the logic here. Ordinarily, yes, I guess we've all gotten death threats, and when we get them, we just assume not to sit on the case. It doesn't seem right. But where it's manipulative, I don't understand what the tension is between manipulative and real. I'm thinking, suppose that a man lines up people, A, B, C, and D, and he says to A, talk, tell me what I want to hear, or I'll shoot you dead. A does not talk, he shoots him dead. And he says to B, talk, tell me what I want to hear, or I'll shoot you dead. B does not talk, he shoots him dead. And he says to C, same thing, and C says, I'll talk. It seems to me the threat, or I'll shoot you dead, has been real in all those cases. And in all those cases, it was manipulative. It was to get the person to talk. I don't actually see some mafia gangster doing the same thing to a false juror to hang the jury. I don't see why it can't be both real and manipulative. I think it can, Your Honor, and I think that's what some of the dicta in the cases seem to acknowledge. I've already pointed out the Greenspan case, and the language there is if one of the motives was manipulation. It doesn't have to be the only one. If it is manipulation, then unlike the threat where we think there's a really bad guy, but it's not trying to manipulate me off the case, then the judge has his choice whether to get off or not. Well, I think the way the language in the cases to me reads is that if one of the motives, if the facts establish that one of the motives is manipulation, the judge has got a duty to stay on. Because the system simply can't reward that because it's just going to happen with the next judge. I mean, you have an undisclosed name. You could have the judge come in and no nameplate, but the defendant can say, hey, you, whatever your name is, I'm going to get you. I'm going to kill your family. I'm going to kill your kids. I guess he could move for rehearing or reconsideration. The other thing I would point out, and I see my time is up, is that the record here clearly shows that Judge Lodge was not prejudiced against the defendant. If you look at the way he handled the sentencing, he gave him three points for acceptance. As the judge stated, that's marginal at best when you look at the way the defendant would, you know, deny different things. He gave him three. Let's say the judge was. I mean, let's say the judge makes it clear from his remarks, I'm going to get you before you get me. And he also, and it's unquestionably manipulative, people would definitely perceive the judge from his remarks as no longer being impartial. Could the judge still sit because the whole point of it was to get him off the case? Well, Your Honor, it seems to me that the way the courts and the way this court has interpreted this statute is that when there's evidence, when the facts indicate the defendant, that one of his motives is to jerk the system around and to manipulate the system, at that point the judge has a duty to sit. You know, and the cases talk about that. A judge's duty to sit in certain cases is just as strong as his duty to get off in other cases. It's a double-edged duty. And here that Judge Lodge threw in. With your view, frankly, what's the best authority for duty to sit? Your Honor, I believe that that is discussed in the Green Pen Span case. That's Pen Circuit. It's also discussed in the Gallo Winery case, which is this court's case. That's 967 F. 2nd, 1280. I believe it's also discussed in the Davies case, 68 F. 3rd, 1129. And in the Sibla case, which is 624 F. 2nd, 864. Thank you, Your Honor. Go ahead. I appreciate my colleague's kind remarks. I would like to point out to the Court that I now have the reputation among Court personnel of being able to handle the crazies. And so every time there's a defendant of questionable sanity and extremely ultra behavior, I'm now appointed on those cases. So I hope to bring you really fascinating issues out of the minds of very unusual people in the future. Thanks. The business is booming, isn't it? Thank you, Counsel. The United States v. Holland is admitted.
judges: Thompson, Kleinfeld, Bybee